## ROLLAND'S HEIRS vs. McCARTY. *

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

The court will not presume, that parties make use of words in their contracts to which no meaning is attached by them. Some effect is to be given to every word if possible; and but rarely will the court reject words or phrases in a contract as surplusage.

Where the act of sale of a lot conveys the object without any exception or reservation, together with " the privileges, rights and pretensions which belong to it; and if the *extent* be greater than is mentioned, it shall be for the advantage of the purchaser," every thing, and all accretions, present and future, pass thereby.

The plaintiffs allege, their ancestor J. B. Rolland was the owner, at his death in 1814, of a large square of ground fronting on Tchoupitoulas street, and extending from the opposite side to the water's edge of the river Mississippi, in New Orleans. That at the probate sale of his succession in 1817, the defendant became the purchaser of a part of this square, which their ancestor had purchased from Marie Josephine Deslondes, wife of Bertrand Gravier, in 1788; having 60 feet front on Tchoupitoulas street, by the depth of 160; bounded on one side by

---

* JUDGE MORPHY did not sit in this case, having been of counsel for defendant.

EASTERN DIS.
June, 1841.

ROLLAND'S
HEIRS
vs.
M'CARTY.

M. Jourdan, and on the other by Saturnine Bruneau, and which was sold with fixed limits and bounds. That the defendant has taken possession of 30 feet front on the opposite side of the street, and of his original quantity, and extending back to New Levee street, which is opened on the batture, formed since the first sale to their ancestor in 1788. The plaintiffs claim all the batture, that has formed since said sale as accruing to them; the defendant having only purchased a certain quantity fronting on Tchoupitoulas street, which was at that time the front street on the levee and river. They pray judgment for the said lot, having 30 feet front on Tchoupitoulas street, French measure, and running back between parallel lines to New Levee street.

The defendant pleaded the general issue; set up title to the property claimed, as derived from the sale from plaintiffs' ancestor to him, and confirmed by a transaction or compromise made with B. Gravier's heirs, E. Livingston, and the corporation, in 1820. He further pleads prescription, &c.

The case has turned principally on the construction of the contracts of sale or transfers of the property in dispute to, and from the ancestor of the plaintiffs, which are fully recited and stated in the opinion of this court.

There was judgment in favor of the defendant, and the plaintiffs appealed.

*Preston*, for the plaintiffs and appellants.

*Roselius*, for defendant and appellee.

*Bullard, J.* delivered the opinion of the court.

The heirs of J. B. Rolland allege in their petition, that their ancestor, in September, 1788, purchased from the wife of Bertrand Gravier, a lot having ninety feet front on the levee of the river, by one hundred and sixty feet depth, bounded at that time on one side by lands of the vendor, and on the other by land of Raphael Ramos, and situated without the incorporated limits of the city of New Orleans. That said lot belonged to

EASTERN DIS.
June, 1841.

ROLLAND'S
HEIRS
vs.
M'CARTY.

a rural estate, the sale of which conveyed to the purchaser the right of alluvion ; there being no reservation in the act of sale. They further allege, that in point of fact the land sold to their ancestor greatly increased by alluvion after the sale, and in 1817 had extended so far in front, that the part outside of the road and levee was not only susceptible of ownership and alienation, separate from the original tract, but was far more valuable than said tract, and not an accessory to the land originally purchased ; but on the contrary as separate property and could not be alienated without the express intention and consent of the owners. The petitioners proceed to allege, that the land thus purchased, descended to them on the death of their ancestors, as well as the alluvion in front of said lot, then forming a part of the batture of the faubourg St. Mary ; and that in pursuance of certain proceedings in the Court of Probates of the Parish and City of New Orleans, they sold on the 17th November, 1817, by act before Michel de Armas, to Louis B. McCarty, a part of the land purchased by their ancestors having sixty feet front on Tchoupitoulas street, by one hundred and sixty feet in depth, which they allege to have sold as a city lot, with fixed limits and boundaries, but that they by no means sold or intended to sell any part of their property outside of the levee. They allege, that they are the proprietors of a lot of sixty feet front on Tchoupitoulas street, and extending in depth between parallel lines to the Mississippi, and that L. B. McCarty has taken possession of thirty feet front, French measure, of said land, and claims the same as owner, and refuses to deliver the same to the petitioners. They pray judgment for the lot thus described.

The defendant first answers by a general denial. He further says, that the ancestor of the plaintiffs never had any title to the lot in question and never pretended to have, and that all the plaintiffs' pretensions or supposed rights to the batture in 1817, and all rights whatever belonging to them were intended to be transferred, and are in reality transferred to the defendant without any reservation whatever. The defendant further

EASTERN DIS.
June, 1841.

ROLLAND'S
HEIRS
vs.
M'CARTY.

answers, that he owns only that portion between Commerce and Levee streets, and that his title is derived from the heirs of B. Gravier, by virtue of a compromise entered into between the defendant and the said heirs. The defendant further pleads prescription and claims the value of his improvements which he avers amount to twenty thousand dollars.

The description of the lot sold by Gravier and his wife to Rolland, is as follows: "Un terreno proprio à mi &c. compuesto de noventa pies de frente y ciento y sesenta de fondo estando fuera de esta ciudad y haciendo frente à la levée de este Rio, lui dando por un lado con tierras de Rafael Ramos y por el otro con tierras de nos los vendedores, cuyo terreno hemos hecho medir por Don Carlos Laveau Trudeau, agrémensor publico, quien puso los majores en sus respectivos lugares."

It appears, that sixty feet out of ninety of this lot was sold in 1817 by the heirs of Rolland to the present defendant. In the act of sale they described it " as a lot of sixty feet front à la levée, between Poydras and Girod streets, faubourg St. Mary, by one hundred and sixty feet depth, bounded on one side by Jourdan, and on the other by Saturnine Bruneau, &c.," and another lot of thirty feet on Magazine street, by a depth of one hundred and sixty, which two lots, they go on to say, " vendus tels qu'ils se poursuivent et comportent sans en rien excepter ni réserver, ensemble les priviléges, droits et prétentions, qui peuvent leur correspondre et même si leur contenance est plus grande que celle ci-dessus mentionée, ce sera à l'avantage du sieur acquéreur."

These terms of conveyance are very broad and comprehensive, and if the plaintiffs claim the batture lot in dispute, as forming an accessary to, or, more properly, a part of the original lot, and formed subsequently to 1788 by alluvion, it is worthy of serious consideration, whether it did not pass to the present defendant by the sale of 1817 above recited.

The title set up by the defendant as derived from the heirs of Gravier, results from a compromise or transaction between the parties. Heirs of Gravier having come to a partition with

Edward Livingston of the batture in front of the faubourg St. Mary, and the lot in question falling within the part assigned to the former, and the present defendant having brought suit for the same as his property, the parties entered into the transaction in question, which recites, that there exists in front of the lot (devant l'emplacement) situated in the faubourg St. Mary between Poydras and Girod streets, and measuring sixty feet front on Tchoupitoulas street, bounded on one side by Jordan and on the other by Bruneau, and of which the said Louis Bartholemey McCarty is the owner by virtue of the acquisition made of the heirs of the late J. B. Rolland, a batture between the Tchoupitoulas street and the margin of the waters of the river, and following as far as the river the lateral lines of said lot; to which batture the said parties pretend respectively to have rights, to wit: the heirs of Gravier, as well in that quality as in virtue of the partition entered into between them and Livingston, and the said McCarty as front proprietor as above set forth; and that in consequence of these pretensions the said McCarty had instituted a suit praying to be declared and decreed proprietor of said batture lot. Now the parties, in this situation of things, desirous of terminating amicably this contestation enter into a transaction or compromise in the following manner. They divide the lot into two equal halves of thirty feet front each, the dividing line running down to the water's edge. The heirs of Gravier cede, transfer and abandon to McCarty all their rights of property to one-half of said batture, to be taken on the side of Poydras street; that is to say below, and as far as the marginal line of the waters, and the said McCarty cedes and abandons all his rights and pretensions to the other half.

The plaintiffs argue that in 1788, previously to 'the sale by Madame Gravier to their ancestor, no batture existed in front of the lot which formed the object of that sale susceptible of private ownership, but that he became a front proprietor, the lot being bounded in effect by the river, and that he and his heirs became consequently owners of the batture lot which

EASTERN DIS.
June, 1841.

ROLLAND'S
HEIRS
vs.
M'CARTY.

EASTERN DIS.
June, 1841.

ROLLAND'S
HEIRS
vs.
M'CARTY.

subsequently was formed in front of it and was incorporated with and became a part of it. That their sale of the front lot in 1817 to the present defendant did not embrace the batture lot which had already been formed and had become susceptible of individual appropriation, use and ownership. They therefore, as they contend, remained owners of the lot in dispute, as an accession to the one originally purchased of their ancestors, and the present defendant in the transaction with the heirs of Gravier falsely assumed to be the owner under his purchase from the plaintiffs, and having obtained a title from the heirs of Gravier, which was merely recognitive of their title, the same ought to accrue to their benefit and vest in them.

It is true that the defendant, both in his action against Livingston et al. and in the subsequent act of compromise or transaction with the heirs of Gravier, assumed the quality of assignee or *ayant cause* of the heirs of Rolland. It was as owner of the front lot under his purchase from these heirs that he claimed the batture, at that time it would appear, indefinite in extent and not yet appropiated to individual use, but forming a part of the unreclaimed alluvial formation in front of that part of the faubourg St. Mary.

There are cases, undoubtedly, in which persons obtaining a title to lands under the false pretext of standing in the right of another, having an inchoate right, as in cases of pre-emption for example, might be compelled to convey, or their title thus fraudulently obtained be declared to enure to the benefit of the equitable owner. But how do the parties stand in relation to each other in the present case? This leads us to enquire into the construction of the contract between the heirs of Rolland and the present defendant, and whether in fact the heirs after that sale retained any title to the premises in dispute.

If the plaintiffs have any title whatever to the lot in controversy it must be in consequence of the purchase of their ancestor, and because the same did not exist at that period but had insensibly grown and attached itself to the lot originally purchased, previously to their sale to the defendant. It must,

therefore, in 1817 have formed a part of the original lot, an enlargement f it by accretion. Now we are not to presume that parties make use of words in their contracts to which they attach no sort of meaning. Some effect is to be given to every word, if possible, or rather we are rarely authorized to reject words or phrases as surplusage. Now the plaintiffs in their act of sale to the defendant sell the lots, such as they are, without any exception or reservation, together with the privileges, rights and *pretensions which belong to them; and even if their extent should be greater than that above mentioned, it shall be for the advantage of the purchaser.* These expressions appear to us wholly irreconcileable with the idea that any part of the property originally acquired by their ancestor was retained or reserved by the heirs, if in the meantime the lot had increased by alluvion. It is difficult to imagine to what else the parties alluded, unless it was to the possibility, that the owner of the lot on Tchoupitoulas street might be entitled to the increase, which was then growing on the outside of the levee as an appurtenance to the original lot, or rather as an integral part of it. If so, it certainly passed by that conveyance to the defendant. This view of the case is strengthened by the fact that the lot now in controversy is not shown to have been separately inventoried as a part of the estate of Rolland, nor offered for sale as such. Under this view of the case it becomes useless to enquire whether the batture existed at the time of the sale to Rolland in 1788 or was formed subsequently. If it existed previously and had become susceptible of private ownership, then, it never belonged to Rolland or his heirs. If it was formed afterwards, the latter could claim it only as a part of the original lot, and in that case it passed, in our opinion, by their conveyance to the defendant.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be affirmed with costs.

Eastern Dis.
June, 1841.

ROLLAND'S
HEIRS
*vs.*
M'CARTY.

The court will not presume that parties make use of words in their contracts to which no meaning is attached by them. Some effect is to be given to every word if possible; and but rarely will the court reject words or phrases in a contract as surplusage.

Where the act of sale of a lot conveys the object without any exception or reservation, together with "the privileges, rights and pretensions which belong to it; and if the *extent* be greater than is mentioned it shall be for the advantage of the purchaser," every thing, and all accretions, present and future, pass thereby.