WESTERN ASSURANCE SOCIETY *v.* SAMUEL J. FERRELL.[*]

### [40 South., 8.]

1. INSURANCE. *Fire policy. Over-insurance. Pleadings.*

Over-insurance not pleaded is no defense to a suit on a fire insurance policy.

2. SAME. *Concurrent insurance. Stipulation. Construction.*

A policy of fire insurance for eight hundred dollars, stipulating "$800 total concurrent insurance permitted, including this policy," does not forbid concurrent insurance, but permits the same to an amount not exceeding eight hundred dollars.

FROM the circuit court of Lauderdale county.

HON. C. C. DUNN, Special Judge.

Ferrell, appellee, was plaintiff in the court below; the Assurance Society, appellant, was defendant there. From a judgment in plaintiff's favor the defendant appealed to the Supreme court. The facts are stated in the opinion of the court.

*H. R. Stone,* for appellant.

To give the sentence in the policy upon which the case turns the construction appellee contends for, the following changes must be made in the contract as entered into and executed by the parties thereto. In the first place the phrase "including this policy" must, by judicial construction, be declared surplusage and discarded, else this case must be reversed. The conclusion is irresistible. And why should the phrase be elimin-

---

[*] This case was decided February 19, 1906; it was not sooner reported because of the misplacement of the record

ASSURANCE SOCIETY v. FERRELL.

nated? The rule is universal that "if the written and printed matter can possibly be reconciled this will be done, for it is presumed that the sentence contains no clause not intended by the parties." *Hardie Tynes Foundry & Machine Co.* v. *Glen Allen Oil Mill,* 84 Miss., 63, 36 South. 262; 17 Am. & Eng. Ency. Law, 21. The burden is on appellee to overcome this presumption.

The court must by judicial construction give the word "concurrent" the meaning of "additional," a meaning which the word has not and never has had in technical or common usage. In legal construction the meaning of a word may be, and often must be limited or enlarged to carry out the evident purpose of the contract, but never completely changed—a new meaning being given thereto—to destroy the manifest intent of the text.

It will be necessary by judicial construction to destroy utterly the force and effect of the word "total" whose meaning is perfectly clear. And under our insurance laws the word "total" is significant in this sentence. It is important, therefore, to review the insurance laws in force at the time the contract sued upon was executed, for the parties are presumed to have contracted in the light of the law as it was then written. I submit that under Chapter 59, Laws 1902, it was the imperative duty of the insurer to know the total insurable value of all property insured, the total inclusive of the policy then to be written, not exclusive of it.

It was imperative in the first place because to over insure any property, including prior policies thereon, subjected the insurer to a probable revocation of its authority to do business. Secs. 33 and 48, Chap. 59, Laws 1902.

It was imperative as a safeguard against possible fraud by subsequent over insurance, for in case of total loss "the measure of damage shall be the amount for which the property was insured." Secs. 33, Chap. 59, Laws 1902. It is perfectly manifest that the law under said chapter contemplated totals, and the parties in the instant case contracting in the light of these

legislative enactments, provided totals, as the contract shows. "$800 total concurrent insurance permitted, including this policy." This provision of the contract is a wise one in view of the insurance laws cited.

*Fewell & Son,* for appellee.

Keeping in mind the fact that the policy was written by the appellant and that its language is to be taken, as to ambiguities, in favor of the assured, (as to which rule we need not cite other authorities than *Boyd* v. *Insurance Co.,* 75 Miss., 47, 21 South., 708), and also the rule of construction that every part of the contract is to be given some meaning, if possible, we ask what was the clause referred to written for? Appellant's contention is that it meant nothing at all—that the policy is to be read as if there is no such provision.

It seems plain to us that the phrase was intended to give permission for additional insurance; either that, or it was a trap set for the unwary assured. Doubtless it led him to believe that he was thereby authorized to take out the additional insurance. What is concurrent insurance? Can a thing be concurrent with itself? It meant other insurance running with this or existing at the same time. Concurrent insurance "permitted." No permission was needed by the assured for the taking out of this policy which was already issuing. And the meaning is clear "$800 total concurrent insurance permitted," meant other insurance running with this. This policy was not concurrent insurance.

But we need not point out the reasons why the true construction is that under the terms of the policy the rider is to be taken to mean additional insurance, for the supreme court of Florida has given these reasons in stronger terms than we can give them in a case directly in point, viz.: the case of *L'Engle* v. *Insurance Co.,* reported in 37 South. 462, to which we refer and upon which we rely.

We are not able to see the applicability of the statutes cited

by appellant. But we may urge that if any light is thrown on the question by the legislation of this state it is in favor of appellee; for the statutes of Mississippi give evidence that there is a plain and unmistakable policy of the state which requires insurance companies to pay losses where they have received premiums. To allow this company to set what really amounts to a snare, to grant permission which was not needed for concurrent insurance, and thus entice the insurer into taking other insurance, and then to escape liability upon the narrow and forced construction here contended for, is not only to evade the policy of the state, but to sanction methods wanting in honesty and fair dealing.

CALHOON, J., delivered the opinion of the court.

Ferrell's house could have borne sixteen hundred dollars of insurance, as is agreed by the parties. He insured it for eight hundred dollars with the appellant, and then took out other insurance elsewhere for eight hundred dollars more, and then his house was destroyed by fire. Appellant offered to restore the premium paid to it by appellee, which Farrell refused, and he then instituted this action to recover the eight hundred dollars. It does not appear that he took any insurance which, with appellant's policy, would exceed the sixteen hundred dollars insurable value of the house. If he had done so it was matter of defense to be pleaded, and this was not done.

In the policy issued by the appellant, and here sued on, are these words: "$800 total concurrent insurance permitted, including this policy." The only question before us is whether this clause admitted of any further insurance at all, the "$800" being exhausted by this original policy.

If the clause had been "$800 total concurrent insurance permitted" and had stopped there, an additional eight hundred dollars would have been allowable; the word "total" being referrable to the words "concurrent insurance permitted." This would mean permission to take out a total of eight hundred dol-

lars of insurance running with the policy issued. If this were not true, the clause would be absolutely senseless, since the first taking exhausted the whole fund for protection. This precise point was adjudicated by the Supreme Court of Florida in the case of *L'Engle* v. *Scottish Union & Nat. Fire Insurance Co.,* 37 South., 462, s. c., 67 L. R. A., 581. The opinion in that case is an elaborate argument, gives many reasons, and, to avoid protracting the present opinion, it is enough to refer it to the consideration of the profession with our approval. But the case at bar has, as has been said, the clause "$800 total concurrent insurance permitted, including this policy," and it is to be now determined what effect must be given to the added words, "including this policy."

It is common learning that construction must make a statute or contract mean something, if possible, and that contracts like this must be considered most strongly in favor of the insured. On the interpretation urged here by the insurance company, the whole clause is a useless redundancy, a meaningless absurdity. If the amount of the total insurance allowed had been in excess of the eight hundred dollars insured in the original policy then the court might well restrict the other insurance to the excess, thus giving the whole clause a meaning. As it is, if the other insurance is to be defeated, it must be because it is held to mean that the first policy meant "concurrent" with itself, that is, that its total of eight hundred dollars must run together with itself. This *reductio ad absurdum* must be avoided, if possible, and it can only be done by referring the words "including this policy" to the permission granted. In this view it means permission to insure for eight hundred dollars concurrently with the eight hundred dollars original insurance already permitted by the granting of the policy; the two permissions being inclusive. It is better to hold the meaning to be that the first permission, recognized in the policy, is embraced as acted on, than to hold the language absolutely senseless. Why give permission, unless something be permitted? Why say anything

about any permission? Why put the figures "$800" before the words "concurrent insurance?" Why not simply say, "No concurrent insurance permitted?"

*Affirmed.*