For the reasons assigned, the judgment appealed from is affirmed.

---

(104 So. 383)

No. 25244.

CORPORATION OF ROMAN CATHOLIC CHURCH OF EUNICE v. ROYAL INS. CO., Limited.

(April 27, 1925. Rehearing Denied May 25, 1925.)

*(Syllabus by Editorial Staff.)*

1. Insurance ⟨key⟩163(1)—Policy insuring building occupied as "day school and dwelling" held to apply to convent and not to day school.

Under fire insurance policy covering a building occupied as a "day school and dwelling only," where evidence showed that building known as day school was never used as dwelling, but that convent was occupied as day school for music classes and as a dwelling, *held* that such policy referred to convent, where clerk of insurer's agent testified that he understood that convent was covered.

2. Insurance ⟨key⟩155—Offer of expired policies to prove intention of parties as to policy in question held properly excluded.

Where question whether a fire insurance policy, insuring building occupied as "day school and dwelling," referred to convent or day school, was in controversy, offer by insurer, of certain expired policies, to show that day school and not convent had been theretofore insured, were properly excluded, as each policy is an independent contract, and expired policies would not be proof of intention of parties in executing new policy.

3. Insurance ⟨key⟩146(3)—Provisions in insurance policy, breach of which involves forfeiture, strictly construed.

Every condition and provision in an insurance policy, breach of which involves a forfeiture of contract, is to be strictly construed.

4. Insurance ⟨key⟩146(3)—Construction favorable to insured adopted, where policy capable of two reasonable interpretations.

When terms of policy are capable of two interpretations, equally reasonable, construction most favorable to insured must be adopted.

5. Insurance ⟨key⟩146(3)—Doubts in meaning of insurance policy resolved against insurer.

Since the insurer prepares insurance contract without consulting insured as to its form, all doubts as to its meaning must be resolved against insurer.

6. Insurance ⟨key⟩150—Rider provision in policy controls, where irreconcilable conflict between it and body of policy.

Provisions may be incorporated in insurance policies by slips or riders, which will be construed in connection with printed provisions of policy, but, if there is an irreconcilable conflict, slip or rider will control.

7. Insurance ⟨key⟩146(3)—Concurrent insurance provision, if ambiguous, construed most strongly against insurer.

Where it is difficult to determine whether provisions in policy for concurrent insurance gives right to obtain insurance in addition to policy containing stipulation, provision will be construed most strongly against insurer.

**8. Insurance ⬩288(2)—Ambiguous rider held to permit additional concurrent insurance not exceeding stated amount.**

Under fire insurance policy containing rider that "total concurrent insurance permitted including this policy, $7,000," *held* that, construing such ambiguous rider most strongly against insurer, the term "total concurrent insurance" refers to other insurance in addition to that provided for in policy, not to exceed $7,000.

On Application for Rehearing.

**9. Insurance ⬩389(4)—Insurance companies represented by one agent, and both issuing policies containing concurrent insurance clause, held to have waived such provision.**

Where both insurance companies were represented by same agent, agent's knowledge was their knowledge, and issuance of a second policy of fire insurance on same building, notwithstanding policies contained warranty against concurrent insurance, was a waiver thereof by both companies, and they are estopped, in suit by insured for destruction of building, to set up such concurrent insurance provision.

Appeal from Civil District Court, Parish of Orleans; Wynne G. Rogers, Judge.

Action by the Corporation of the Roman Catholic Church of Eunice, La., against the Royal Insurance Company, Limited. Judgment for plaintiff, and defendant appeals. Affirmed.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, for appellant.

W. J. & H. W. Waguespack, of New Orleans, for appellee.

BRUNOT, J. This is a suit upon a fire insurance policy, for statutory damages and for attorneys' fees.

From a judgment in favor of plaintiff for the full amount of the policy, with 12 per cent. thereon as damages and $250 as attorneys' fees, the defendant appealed.

The petition alleges that defendant issued its policy No. 631, by which it insured a two-story frame shingle-roof building, owned by plaintiff, and occupied by the Sisters of the St. Paul Institute as a day school and dwelling only, against direct loss or damage by fire, to an amount not to exceed $2,500; that the property was totally destroyed by fire on the 15th day of December, 1920; and, notwithstanding plaintiff's compliance with all of its obligations and duties under the provisions of the policy, defendant failed and refuses to pay said loss.

The answer admits the issuance of the policy sued upon, the total destruction of the building, defendant's refusal to furnish plaintiff with blank proofs of loss, or to pay the said loss.

The defense is that the property destroyed was not covered by the policy sued upon, or, if so, the policy was void because of other insurance.

The plaintiff owns a square of ground in Eunice, St. Landry parish, La., and four buildings located thereon, viz.: A church, a priest's residence, a day school, and a convent.

The policy sued upon insures three of plaintiff's buildings, as follows:

"$2,000, on their one-story frame shingle-roofed church and all additions thereto attached.

"$2,500, on their one-story frame shingle-, roofed dwelling occupied by the priest as a residence.

"$2,500, on their two-story frame shingle-roofed building occupied by the Sisters of St. Paul's Institute as a day school and dwelling only."

[1] It is admitted that the first and second items of the policy cover the church and the priest's residence, respectively, but the third item is in dispute. Plaintiff contends, and the trial court held, that this item covered the convent, which building was burned, while defendant insists that the third item covers the day school, which was not damaged by the fire.

It is proven—in fact, it is admitted—that the day school was never used as a dwelling and was never occupied at night. It is proven that the convent was occupied as a day school for music classes and by the Sis-

ters of St. Paul's Institute as a dwelling. Therefore the descriptive words in the policy, viz. "occupied by the Sisters of St. Paul's Institute as a day school and dwelling only," can have reference to no other building than the convent, because that building alone was occupied by the Sisters of St. Paul's Institute as a dwelling.

[2] The use of the words "day school" in the policy, and the fact that one of plaintiff's buildings was used exclusively for a day school, is the ground upon which defendant's contention rests as to the identity of the particular building insured. Defendant offered certain expired policies of insurance to show that, prior to the issuance of the policy sued upon, plaintiff had insured the day school but had not insured the convent. The offerings were excluded by the trial judge, and we think his ruling was correct. Each policy is an independent contract. What particular property may have been covered by an expired policy is not proof of the intention of the parties in the confection of a new policy, and it can be of no avail in interpreting the provisions of a subsequently issued and differently written contract. Defendant contends that the insured did not intend the policy sued upon to cover the convent; that the insurance was written during the incumbency of Father Duall's predecessor, as prelate, and Father Duall merely requested defendant's agent to renew the policies. The testimony is that Father Duall never saw the policies until after the fire. The policies were issued by Mr. Lacomb, the agent and representative of the defendant, who did not deliver them to the insured but retained possession of them. Mr. Fitzpatrick, Mr. Lacomb's clerk, wrote the policies, and Mr. Lacomb signed them and then placed them in the vault of the American Bank & Trust Company for safe-keeping. Father Duall, as a witness, says that a few days after the fire, but before the controversy resulting in this suit had arisen, Mr. Fitzpatrick called upon him and advised him to insure the school building, but he declined to do so for lack of funds with which to pay the premium. Mr. Fitzpatrick testified, with reference to the policy sued upon, as follows:

"A. I thought it covered the convent, and told Father Duall that it did.

"Q. When did you tell Father Duall you thought the policy covered on the convent?

"A. A day or two before it ran out, when I went to see if he wanted it renewed."

This was at an unsuspicious time, and it seems to fix the intention of the parties with reasonable certainty. It must be remembered that there is no suggestion of fraud or misrepresentation in this case.

We concur in the conclusion announced by the trial judge that:

"The policy either covered the building used jointly as a music school and dwelling for the Sisters or it covered nothing. If it did not cover that building, it created a situation in which the insurance company was the recipient of premiums on a mere 'scrap of paper' on which defendant obtained something for nothing. This is an impossible construction, and is in the teeth of the plain language of the policy itself and also of the testimony of Mr. Fitzpatrick, the clerk of Mr. Lacomb, the agent of the defendant company."

The alternative defense is based upon the clause found in lines 11, 12, and 13 of the policy, to wit:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

The following slip, or rider, is attached to the policy sued upon:

"Total concurrent insurance permitted including this policy, $7,000, as follows: $7,000 on building."

The policy issued by defendant is for $7,000 on buildings.

The alternative defense requires an inter-

pretation by the court, therefore, of the meaning of the foregoing rider and the significance of the words "concurrent insurance" as used therein.

[3-5] Every condition and provision in an insurance policy, the breach of which involves a forfeiture of the contract, is to be construed strictly. If the terms of a policy are capable of two interpretations, equally reasonable, it is the general rule that the construction which is most favorable to the insured must be adopted. As it is the company that prepares the contract, the insured not being consulted with regard to the form thereof, all doubts in regard to its meaning must be resolved against the company. Am. & En. Ency. vol. 16, p. 863.

"In construing the contract of the parties and their acts in connection therewith, the rule is to avoid forfeiture when it may be fairly done." McMaster v. New York L. Ins. Co. (C. C.) 78 F. R. 33; Knickerbocker L. Ins. Co. v. Norton, 96 U. S. 234, 24 L. Ed. 689; New York L. Ins. Co. v. Eggleston, 96 U. S. 572, 24 L. Ed. 841; Thompson v. Knickerbocker L. Ins. Co., 104 U. S. 252, 26 L. Ed. 765.

The foregoing rules apply generally in interpreting all policies of insurance, but the nature of the risk in property insurance is quite different from that in life insurance, because in the former a loss may or may not occur, but in the latter the event insured against is certain to occur.

[6] It is likewise an accepted rule that provisions may be incorporated in insurance policies by slips or riders.

"Such slip or rider will be construed in connection with the printed provisions of the policy and the entire contract harmonized if possible; but, if there is an irreconcilable conflict, the slip or rider will control." C. J. vol. 26, pp. 76, 77.

[7] It is sometimes difficult to determine whether provisions for concurrent insurance of a specified amount give a right to obtain insurance in addition to the policy containing the stipulation. In determining this question, where the provisions are ambiguous, the rule is applied that the provisions will be most strongly construed against the insurer.

"Where a policy provides that it shall be void, unless otherwise stipulated by agreement indorsed thereon or added thereto, if the insured has other insurance on the property, it has been held that an indorsement reading, '$150,-000 total concurrent insurance permitted,' means that insurance to that amount outside of the amount of the policy containing the provision, is permitted." 49 L. R. A. (N. S.) 376.

In Parkhurst-Davis Mercantile Co. v. Merchant Underwriters, 237 Ill. 492, 86 N. E. 1062, the court said:

"The controversy over the language quoted is whether concurrent insurance means insurance including the policies in question or other insurance concurring with it. Concurrent, as used in the policies, means running with. * * * The most that can be said of the provision is that it was ambiguous, and, being equally susceptible of more than one construction, that one must be adopted which is most favorable to the insured."

It has been held that a clause in a policy for $800, providing "$800 total concurrent insurance permitted," gives permission to insure for $800 concurrently with the $800 covered by the policy. Western Assurance Soc. v. Ferrell, 92 Miss. 103, 40 So. 8. It has also been held that, where a policy for $2,500 provides that it shall be void if the insured has or obtains other insurance, unless otherwise provided by agreement indorsed thereon, and attached to the policy are three slips bearing the same date as the policy, one fixing the insurable interest of the property at $2,500, another bearing a mortgage clause providing for contribution, and the third containing a description of the property insured, with the amount of the insurance written thereon, and providing, "$2,500 total concurrent insurance permitted," the last clause, construed with other provisions, permits other concurrent insurance not exceeding $2,500. L'Engle v.

Scottish Union & Nat. F. Ins. Co., 48 Fla. 82, 37 So. 462, 67 L. R. A. 581, 111 Am. St. Rep. 70, 5 Ann. Cas. 748.

[8] The weight of authority is to the effect that "total concurrent insurance" refers necessarily to other insurance in addition to that provided for in the policy. Washburn-Halligan Coffee Co. v. Merchants' Brick Mt. F. Ins. Co., 110 Iowa, 423, 81 N. W. 707, 80 Am. St. Rep. 311; Corkery v. Security F. Ins. Co., 99 Iowa, 382, 68 N. W. 792; Anthony, Matter of, 39 App. Div. 639, 57 N. Y. S. 1139.

In the case before us, the slip or rider attached to the policy is ambiguous, and applying the rules of interpretation we have referred to as the legal and proper methods of arriving at its meaning, we are of the opinion that it permits additional concurrent insurance not to exceed $7,000, on plaintiff's three buildings covered by the policy sued upon, or not to exceed $2,500 on the building which was burned. As the additional insurance covering this building was $2,000, we do not think the contract was breached by plaintiff in any respect, and the judgment of the district court is therefore correct.

For these reasons, the judgment appealed from is affirmed, at appellant's cost.

ROGERS, J., recused.

On Application for Rehearing.

ST. PAUL, J. The policy sued upon undoubtedly covered the only building occupied by the Sisters as a dwelling, which was the building destroyed by fire.

On the other hand, the insured had concurrent insurance in excess of the amount allowed by the policy, to wit, $2,000 in the Providence-Washington Insurance Company, for defendant's policy was for $7,000, and limited the total concurrent insurance permitted "including this policy" also to $7,000.

158 LA.—20

[9] But both companies were represented by the same agent, and *his knowledge was their knowledge.* Hence the issuance of a second policy, notwithstanding the warranty against concurrent insurance in both policies, was a waiver thereof by both companies. Plaintiff was not overinsured, even with both policies in force; and, if the two companies, or either of them, were not willing to carry the full amount of insurance which plaintiff desired, it was their place to speak at once, to the end that plaintiff might take its insurance elsewhere if so minded. Not having spoken at a time when plaintiff was still in position to protect itself, they are estopped from complaining now that plaintiff is no longer in a position to do so. See Bank v. Manhattan Life Ins. Co., 52 La. Ann. 36-48, 26 So. 800.

I therefore recommend that the rehearing be refused.

PER CURIAM. For reasons assigned, a rehearing is refused.