165 So. 11

ISTROUMA MERCANTILE CO., Inc., v.
NORTHERN ASSUR. CO., LIMITED,
OF LONDON.

SAME v. NORTH RIVER INS. CO. OF
NEW YORK.

No. 33455.

Dec. 2, 1935.

St. Clair Adams & Son, of New Orleans, for appellants.

Leslie A. Fitch and Chas. A. Holcombe, both of Baton Rouge, for appellee.

FOURNET, Justice.

Plaintiff instituted two suits on fire insurance policies to recover the face value thereof; that is, $2,500 in the Northern Assurance Company of London, and $2,500 in the North River Insurance Company of New York, together with the statutory penalty of 12 per cent. and 20 per cent. attorney's fees, with interest from judicial demand.

The defendants denied liability. The defenses in both suits are the same, except in the case of the first-named defendant, Northern Assurance Company of London, wherein the defendant set up an additional special defense peculiar to itself, that the policy issued by it is null and void because the assured procured other insurance in violation of the prohibitory clause in the policy and indorsement thereon, and they are briefly as follows:

(1) That the plaintiff violated the iron safe clause and particularly paragraphs 1 and 2 thereof, that provide:

(a) For the taking and keeping of an inventory; and

(b) The keeping of a complete set of books.

(2) That in any event plaintiff has failed to satisfy the burden of proof by proving in any way whatever the amount of its loss and damage, or the quantity or value of the merchandise destroyed by the fire, and has failed utterly to prove its cause of action with any reasonable degree of certainty.

(3) That plaintiff either set fire to the premises itself or procured some one else to do so for the fraudulent purpose of collecting the insurance.

By agreement of counsel, the cases were tried together, and attorney's fees were fixed at 15 per cent. of whatever amount might be recovered by the plaintiff.

The trial judge rendered judgment in favor of plaintiff, and the defendants have appealed.

The policies sued on are dated December 4, 1933, and are in the New York standard form. The policy contracts of the two companies contain the iron safe clause, sections 1 and 2 of which are as follows:

"1. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year and, unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within 30 days of issuance of this policy, or *this policy shall be null and void from such date,* and upon demand of the assured the unearned premium from such date shall be returned.

"2. The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, *from date of inventory,* as provided for in first section of this clause, and during the continuance of this policy." (Italics ours.)

The undisputed facts are that, at the time of the issuance of the policies, December 4, 1933, the plaintiff had not made a complete inventory during the twelve months preceding that date, and therefore, under the iron safe clause, it was mandatory that

an inventory be made within thirty days of the date of the issuance of the policy. The fire took place on January 3, 1934. The evidence shows that on December 30, the plaintiff made a rough inventory of its merchandise, with the exception of $300 or $350 worth of miscellaneous articles, which rough draft was placed in its iron safe and taken therefrom after the fire in the presence of defendant's agent, and that, in order to establish the amount of its loss, plaintiff annexed the inventory or projet to its proofs of claims filed with defendant companies.

In the case of St. Landry Wholesale Mercantile Co. v. Teutonia Ins. Co., 113 La. 1053, 1058, 37 So. 967, 969, a policy was issued which contained a clause similar to the one under discussion, and in that case we said:

"The policy was issued on January 2, 1903, and therefore plaintiff had 30 days from that date within which to take 'a complete itemized inventory of stock on hand' as required by first paragraph of the said clause."

After discussing the inventory in question, the court held:

"If plaintiff company had made no attempt to take an inventory prior to the date of the fire, defendant company could not have complained. Hence the former was guilty of no negligence in not perfecting and preserving the inventory in question."

But counsel for defendants contend that the inventory made December 30, 1933, satisfies all the requirements of an inventory except the requirement that it must be a "complete itemized inventory of stock on hand," and argue that, because plaintiff did make an incomplete inventory prior to the thirty-day period in which such inventory must be made and attached the same to its proofs of claims, plaintiff thereby failed to comply with the iron safe clause in respect to the inventory, and plaintiff is estopped from saying it did not make an inventory and cannot recover. In other words, counsel argued that, if the plaintiff had made no inventory whatsoever within the thirty-day period allowed, it would be protected, but, having made an inventory, though not strictly in compliance with the clause and attached the same to its proofs of claims, it cannot recover.

■ A mere reading of the clause referred to shows conclusively that the contract is in full force and effect for the full thirty days after the issuance thereof, and it becomes *null and void from such date* (after the thirty-day period) in the event that the inventory provided for has not been taken within the prescribed time (thirty days of the issuance of the policy), and we must give it that effect. St. Landry Wholesale Mercantile Co. v. Teutonia Ins. Co., supra.

■ Necessarily this disposes of counsel's contention that plaintiff failed to comply with the requirement in paragraph 2 of the iron safe clause; the only requirement being that the "assured (plaintiff) shall keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all the purchases, sales and shipments, both for cash and credit, *from date of inventory*, as provided for in first section of this clause, and during the con-

tinuance of this policy." The prescriptive time to complete the inventory had not elapsed at the time of the fire, and therefore defendants cannot successfully plead it.

## II.

This brings us to the next defense; that is, that the plaintiff has failed to satisfy the burden of proof as to the amount of its loss and damage or the quantity and value of the merchandise destroyed by fire.

On this issue the record discloses that W. D. Talbert, who had been operating for several years a general merchandise store in his own building at Istrouma, sold his business in November, 1932, to Simon Levy and Marcel K. Grumbach and leased to them the store space, together with the fixtures, but he later sold the fixtures to the plaintiff. During negotiations for the purchase of the business, Levy and Grumbach undertook to make an inventory to ascertain the value of the stock, and, when only half completed, the value amounted to $3,416. Being satisfied with the value of the stock and without completing the inventory, they closed the deal. On December 31, 1932, the vendees incorporated under the name of Istrouma Mercantile Company, the plaintiff herein. From the date of incorporation to the date of the fire, as disclosed by invoices and cost books, plaintiff purchased new and additional merchandise in the sum of $12,006.92, and during the same period the cost value of the goods sold amounted to $9,644.60. The record also shows that the plaintiff's books were kept by Mr. Grumbach, who is not an expert bookkeeper, nevertheless they constitute a complete record from the time plaintiff be-

gan to do business to the date of the fire; that an audit of plaintiff's books, made by L. A. Champagne, a certified public accountant of Baton Rouge, showed the stock on hand at that time to be worth at cost $5,659; that the inventory taken by Mr. Grumbach, assisted by his wife and son, on December 30, 1933, showed the cost value of the stock to be $6,537; that a Mr. Sam Dryfuse, traveling salesman for the Bloom Shoe Company of Boston, in order to ascertain what his client might need in the month of December, went through the plaintiff's stock of shoes and found that the stock contained 1,200 pairs of shoes, worth between $1,600 and $1,700; that a Mr. Milton Lefkowitz testified that two weeks before the fire he made an inventory of the entire stock for the purpose of checking the credit of that concern from which he frequently received large orders, and, after examining and making a careful inventory of the entire stock, it totaled $6,129.56.

Counsel for defendants contend "that the 'rough inventory' or projet of December 30, 1933; the alleged one-half inventory of December 25th, 1932; the books of account, and the parole testimony to prove quantity and value were inadmissible and, even if considered, did not establish plaintiff's loss and damage with that reasonable degree of certainty required by law."

In the case of Shea v. Sewerage & Water Board, 124 La. 299, at page 332, 50 So. 166, 177, we held that "the rule is that a litigant's books are not admissible in evidence in his favor; but that rule is not without its exceptions." We have also held that "books * * * of merchants with whom he deals, are not per se evidence for

him. But witnesses may look into them, to refresh their memory. * * * This is the only way in which factors can prove their accounts." Wm. Flower v. S. W. Downs, 6 La.Ann. 538; Morgan v. Bickle et al., 2 Mart.(N.S.) 377, 387; Kendall v. Bean, 12 Rob. 407.

"The day books, ledgers and cost books of the insured are admissible to show value, if supported by competent witnesses." Couch on Insurance, p. 7269, vol. 8, § 2234. See, also, Coleman v. Lumbermen's Ins. Ass'n, 77 Minn. 31, 79 N.W. 588, and Read et al. v. State Ins. Co., 103 Iowa, 307, 72 N.W. 665, 64 Am.St.Rep. 180.

This is in accord with our jurisprudence; for we held in the case of St. Landry Wholesale Mercantile Co. v. Teutonia Ins. Co., supra, that "the amount of loss was readily ascertained from the books and invoices."

■ The evidence offered by the plaintiff was competent and admissible and established the value of the goods destroyed, especially since no evidence was offered in rebuttal to prove the contrary.

### III.

Defendants' next defense is that plaintiff set fire to the premises, or had some one to do it for it in order to collect the insurance. On this point we find no evidence in the record in support thereof. It is counsel's contention, however, that they could not support by evidence their defense of arson, "because the trial judge refused to permit defendants to refresh the memories of two witnesses by testimony previously given by them before the Fire Marshal of

the State of Louisiana, although defendants pleaded surprise, and * * * refused to permit defendants to take a bill of exceptions and to make the testimony of these two witnesses a part thereof, in order that their testimony could be brought to this Court for the purpose of illustrating the law question, and *to show the extent to which the trial judge had denied justice to defendants.*" (Italics ours.)

In the case of State v. Vickers, 47 La. Ann. 1574, 18 So. 639, 640, cited by counsel for defendants, we said:

"It is a general rule that a party cannot impeach the testimony of his own witness. State v. Shonhausen, 26 La.Ann. 421; State v. Thomas, 28 La.Ann. 827.

"The exception is that he is sometimes permitted, in cases of hardship, when the testimony of the witness is unexpectedly unfavorable, to contradict him by other evidence relevant to the issue in the case. 1 Starkie Ev. 147; 1 Greenleaf Ev., pars. 442, 443; 3 Rice Ev. p. 373; State v. Simon, 37 La.Ann. 569."

The court also quoted with approval from Greenleaf as follows:

"You may cross-examine your own witness if he testify contrary to what you had a right to expect as to what he had stated in regard to the matter on former occasions, either in court or otherwise, and thus refresh the memory of the witness, and give him full opportunity to set the matter right if he will; and, at all events, *to set yourself right before the jury. But you cannot do this for the mere purpose of discrediting the witness; nor can you be allowed to prove the contradictory statements of the*

*witness upon other occasions, but must be restricted to proving the facts otherwise by other evidence."* (Italics ours.)

■ We think that, under the jurisprudence of this state, the defendants clearly had a right to cross-examine their witnesses Leon Guerin and Fred C. Parker to refresh their memory and, if necessary, to destroy their testimony by impeachment. The purpose of this rule is that one who is entrapped in placing a witness on the stand, who, without warning, becomes hostile has a right to offset whatever damaging testimony his witness may have given by cross-examining him to show that he made prior contradictory statements.

■ We would remand the case if the testimony given by these witnesses had in any manner injured or prejudiced defendants' rights. Their answers to the questions asked do not show that to be true. Besides, defendants apparently abandoned this plea, as the record is totally lacking of evidence to establish arson, except the feeble effort made when the witnesses Guerin and Parker were placed on the stand. Defendants certainly could not hope, under the circumstances, to prove arson by their testimony alone.

## IV.

We shall now consider the defense that the policy issued by the Northern Assurance Company is null and void because the plaintiff procured other insurance in violation of the prohibitory clause and its rider or indorsement.

The prohibitory clause in the policy reads as follows:

"This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

The indorsement on the policy is dated December 29, 1933, and reads as follows:

"$2,500.00 total concurrent insurance permitted, including this policy."

The defendant contends that the meaning of the foregoing language restricts the total insurance on the merchandise to $2,500, and that the plaintiff, having violated the provision of the contract prohibiting any other insurance on the same property without an agreement and indorsement to that effect added thereto, the contract is null and void, citing the following cases: Home Insurance Company of New York v. Morrow, 145 Ala. 284, 39 So. 587; Senor et al. v. Western Millers' Mutual Fire Insurance Co., 181 Mo. 104, 79 S.W. 687; East Texas Fire Insurance Co. v. Blum et al., 76 Tex. 653, 13 S.W. 572; 26 Corpus Juris, 258.

On the other hand, plaintiff maintains that the indorsement does *permit* additional insurance in the sum of $2,500, and further that the agent of the defendant insurance company knew when he issued the policy in the Northern Assurance Company that the plaintiff had other insurance with the North River Company and the indorsement was written by the agent and delivered to plaintiff for the express purpose of *permitting* additional insurance, and that the company thereby waived and is estopped to assert any right it may have had under the

terms of its policy to have the same declared invalid.

In the case of Corporation of Roman Catholic Church v. Royal Ins. Co., Ltd., 158 La. 601, 609, 104 So. 383, 385, in interpreting the attached rider or indorsement to the policy reading, "total concurrent insurance permitted including this policy, $7,000, as follows: $7,000 on building," we said:

"The weight of authority is to the effect that 'total concurrent insurance' refers necessarily to other insurance in addition to that provided for in the policy."

But counsel for the defendant point out in their brief that the original decision in that case was supplanted by the opinion rendered on application for a rehearing which puts the decree on an entirely different ground; that is, both companies were represented by the same agent, and the knowledge of the agent was imputed to the companies.

We must therefore ascertain the intent of the parties to the contract, irrespective of the verbiage used. Articles 1945, 1946, Rev.Civ.Code.

Mr. Marcel Grumbach, the president and manager of the plaintiff company, testified that it was understood by the agents of both defendants that the plaintiff, up to December 4, 1933, carried only $3,000 insurance, and was henceforth carrying $5,000 of insurance upon the merchandise and furniture which was divided equally between the two insurance companies. This is borne out by the fact that the agent of the North River Company, through its local agent, immediately issued its unequivocal indorsement on its policy, authorizing the issuance of $2,500 additional insurance, and further that, according to the provisions of the policies, the Northern Assurance Company, through its agent, likewise at about the same time, issued and attached its indorsement—the one in question.

The defendant's agent who, on direct examination, strongly denied that it was ever the intention of the company to issue an indorsement authorizing additional insurance, explained the reason therefor under cross-examination as follows:

"Q. I have not been able to understand why you attached the rider permitting $2,500 total concurrent insurance, including this policy, unless you meant what you said.

"A. Mr. Holcombe, I have answered that question twice. I will try to answer it again. When the policy of $2,500 was issued it permitted $500 additional insurance. If the $500 policy was cancelled, and it was cancelled, then the $2,500 policy had to be endorsed, changing the policy *so as not to permit $500 additional insurance. There was merely $2500 additional insurance.*" (Italics ours.)

In connection with this phase of the case, it is interesting to note that prior to December 4, 1933, the plaintiff carried insurance in the North River Company for the sum of $2,500 and with the Northern Assurance Company only $500, and, when the North River Company received notice that the plaintiff was taking additional insurance, it issued its unqualified approval of the additional insurance. On the other hand, the Northern Assurance Company, *the company which was writing the additional insurance, permitted by the indorse-*

*ment of the North River Company, wrote the clause now under consideration on the policy of additional insurance.*

If it was not the intention of the company to permit additional insurance to the extent of $2,500, instead of limiting the total amount of insurance to the amount of $2,500, then why was the indorsement ever attached to the policy? The plaintiff was carrying $3,000 of insurance, and the idea was to increase the amount thereof, not reduce it. The total amount allowed by the indorsement was $2,500, the exact amount of that insurance policy. With the clause in the policy positively prohibiting the insured from obtaining any other insurance than the amount of the contract under the penalty of voiding the contract, it makes the indorsement *a vain and useless provision.*

"The court will not presume, that parties make use of words in their contracts to which no meaning is attached by them. Some effect is to be given to every word if possible; and but rarely will the court reject words or phrases in a contract as surplusage." Rolland's Heirs v. McCarty, 19 La. 77.

"In a doubtful case the agreement is interpreted against him who has contracted the obligation." Civ.Code, art. 1957. "But if the doubt or obscurity arise for the want of necessary explanation which one of the parties ought to have given, * * * the construction most favorable to the other party shall be adopted. * * *" Civil Code, art. 1958.

In Joyce on Insurance (2d Ed.) vol. I, p. 574, § 220, it is said:

"Where the intent of conditions or stipulations involving disabilities or forfeitures is doubtful, they should be construed against the party for whose benefit they were imposed, and *forfeitures should, if possible, be avoided, and the contract sustained;* for the right to insist upon forfeitures is stricti juris, and courts will not favor forfeitures by literal intendment and enlarged constructions, nor will they declare forfeitures by implication, as they are not favored in the law. And especially are forfeitures not favored in the law where they are induced by the conduct of the agent representing the insurer." (Italics ours.)

On the same subject, we find the following in 26 Corpus Juris, § 70, p. 72:

"If the language of the policy is ambiguous and susceptible of more than one construction, *it should be construed strictly against insurer who prepared it and liberally in favor of insured; and this rule has been applied with particular force to conditions and exceptions in the policy, especially those clauses which relate to matters after the loss, or provide for forfeiture,* and it has been held that if the words are susceptible of the interpretation given them by insured, although in fact intended otherwise by insurer, the policy will be construed in his favor. *The object of the contract being to afford indemnity, it will, in case of doubt, be so construed as to support the indemnity, and avoid forfeiture.*" (Italics ours.)

See, also, 14 R.C.L., p. 926, § 103.

In interpreting a similar clause as the one in question here, the court, in the case of L'Engle v. Scottish Union & National Fire Ins. Co., 48 Fla. 82, 37 So. 462, 465, 67 L.R.

A. 581, 111 Am.St.Rep. 70, 5 Ann.Cas. 748, said:

"It [the endorsement] purports clearly and definitely to give the insurer's consent or permission for '$2,500 total concurrent insurance.' Unless other or additional concurrent insurance was intended, *then the clause means nothing more than that the insured is permitted to take out and carry this particular policy, which is absurd, for no such permission was within the contemplation of the parties, or required by the terms of the policy.* The use of the word *'permitted,' shows that the insurer intended to give its consent to something that was prohibited by the policy.* As the prohibition extends only to other insurance and not to the insurance then written, we must apply the permission to the kind of insurance prohibited, viz., other insurance, for the conclusion is irresistible that the parties so intended it." (Italics ours.)

In the case of Western Assurance Soc. v. Ferrell, 92 Miss. 103, 40 So. 8, the indorsement on the policy was identical with the one in question, except the amount. The court stated as its reasons for holding that the clause permitted additional insurance that:

"It is common learning that the construction must make a statute or contract mean something, if possible, *and that contracts like this must be considered most strongly in favor of the insured. On the interpretation urged here by the insurance company, the whole clause is a useless redundancy, a meaningless absurdity.* If the amount of the total insurance allowed had been in excess of the $800 insured in the original policy,

then the court might well restrict the other insurance to the excess, thus giving the whole clause a meaning. As it is, if the other insurance is to be defeated, it must be because it is held to mean that the first policy meant 'concurrent' with itself; that is, that its total of $800 must run together with itself. This reductio ad absurdum must be avoided, if possible, and it can only be done by referring the words 'including this policy' to the permission granted.

"In this view it means permission to insure for $800 concurrently with the $800 original insurance already permitted by the granting of the policy; the two permissions being inclusive. It is better to hold the meaning to be that the first permission, recognized in the policy, is embraced as acted on, than to hold the language absolutely senseless. *Why give permission unless something be permitted? Why say anything about any permission? Why put the figures $800 before the words 'concurrent insurance'? Why not simply say 'no concurrent insurance permitted'? Affirmed.*" (Italics ours.)

See, also, Parkhurst-Davis Mercantile Co. v. Merchant Underwriters, 237 Ill. 492, 86 N.E. 1062.

■ We are of the opinion that the indorsement in question was attached to the policy for the purpose of *permitting* $2,500 additional insurance. We are fortified in this view because all the surrounding circumstances reflect that fact. Mr. Grumbach testified that he was solicited for and that he decided to take additional insurance, and finding that the policies prohibited additional insurance, he notified both companies,

the North River Company and the Northern Assurance Company; the former immediately attached its indorsement authorizing additional insurance, and the latter on December 29, 1933, twenty-five days after the issuance of the policy, issued its indorsement. The merchandise insured was worth more than the total amount of the face values of the policies, and, if it was not the intention of the parties to permit additional insurance under the terms of the policies, the indorsement was unnecessary.

We have carefully reviewed the cases cited by counsel for defendant. They are not controlling in the instant one.

For the reasons assigned, the judgment of the district court is affirmed; defendants to pay all costs.

ODOM, J., takes no part, not having heard the arguments.